UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

DAVID CHRISTOPHER LEE WALTON,

      Plaintiff,

      v.                                 Case No. 22-C-7

ASHLEY NEHLS,

      Defendant.

─────────────────────────────────────────────

**DECISION AND ORDER**

─────────────────────────────────────────────

Plaintiff David Christopher Lee Walton is a prisoner currently serving a state sentence at Green Bay Correctional Institution (GBCI). Walton filed this 42 U.S.C. § 1983 action *pro se* seeking damages for violations of his rights under the Eighth Amendment to the United States Constitution, which proscribes cruel and unusual punishment. Walton's claim rests on the absurd notion that he was subjected to such punishment while an inmate at Waupun Correctional Institution (WCI) when he freely engaged in a consensual sexual relationship with a female WCI staff nurse from June 2021 through August 2021. The Court has jurisdiction under 28 U.S.C. § 1331. The case is before the Court on the defendant nurse's motion for summary judgment. The Court will grant Defendant's motion and dismiss this case.

**BACKGROUND**

During the relevant time, Walton was an inmate at Waupun Correctional Institution where Defendant worked as a nurse. Walton, who is serving a sentence of eighteen years for his second armed robbery conviction, is six feet, three inches tall, and weighs 245 pounds. Defendant, according to Walton, is five feet, six inches and weighs about 120 pounds. Dkt. No. 21-1 at 3–6.

Walton asserts that, in early June 2021, Defendant touched his arm and kissed him during a medication pass. He states that he did not report the kiss, in part, because he enjoyed the attention and wanted it to happen again. According to Walton, he and Defendant kissed and touched each other in the health services unit several times a week for nearly three months. The touching consisted of Walton touching Defendant's breasts or buttocks, and Defendant touching his chest or stomach. On several occasions, Walton testified that Defendant touched his penis. On all but one occasion it was over his clothing. *Id.* at 14–37.

Walton describes their relationship as "kind of like two high school kids making out." He acknowledges that he was physically attracted to Defendant and that he "enjoyed it." He states that the two of them had an "emotional connection" and that he would have considered her his girlfriend had they met outside of prison. Walton asserts that Defendant would sometimes give him contraband such as junk food, candy, pain pills, and a cell phone. He states that Defendant never asked for anything in return, and he never gave her anything in return. Dkt. Nos. 20, 26 at ¶¶6–20.

Walton explains that their relationship ended on August 30, 2021, after officers discovered him bending over Defendant in a room with the lights off and the door closed and blocked by a medication cart. Walton was transferred to Dodge Correctional Institution the next day. Walton asserts that, following an investigation, Defendant's employment was terminated. Walton has had no contact with Defendant since his transfer. Dkt. Nos. 20, 26 at ¶¶23–26; Dkt. No. 21-1 at 28–31; Dkt. No. 1 at 4.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishment." U.S. Const. amend. VIII. In simple terms, "cruel and unusual punishment" means "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Ingraham v. Wright*, 430 U.S. 651, 670 (1977) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (altered)).

By his own admission, Walton did not suffer from the unnecessary and wanton infliction of pain. To the contrary, Walton testified that he was attracted to Defendant and enjoyed his encounters with her. He testified under oath that his relationship with her was consensual. He even said they acted like "two high school kids kind of like making out" and that, if he had not

3

been incarcerated, he would have considered her his girlfriend "because who has that type of an emotional connection or a physical—a physical connection, should I say, without being in some type of relationship." Dkt. No. 21-1 at 15, 33–34. It is ludicrous to suggest that a reasonable jury could find from this evidence that Defendant violated Walton's Eighth Amendment rights by subjecting him to cruel and unusual punishment. *See Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997) (holding that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment"); *see also Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1126 (10th Cir. 2013) ("Absent contrary guidance from the Supreme Court, we think it proper to treat sexual abuse of prisoners as a species of excessive-force claim, requiring at least some form of coercion (not necessarily physical) by the prisoner's custodians."); *Hall v. Beavin*, 202 F.3d 268, 1999 WL 1045694, at *1 (6th Cir. 1999) (unpublished decision) (finding no merit to plaintiff's Eighth Amendment claim where the "evidence established that [plaintiff] voluntarily engaged in a sexual relationship with [defendant]").

This is not to suggest that a prison official who sexually abuses an inmate does not violate the Eighth Amendment's prohibition of cruel and unusual punishment. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 376 (7th Cir. 2020). Not only does the prison official who sexually abuses an inmate violate the inmate's Eighth Amendment rights, but so does the governmental entity that employs the official if it exercises deliberate indifference and fails to act in the face of obvious and known risks to the inmate. *Id.* at 380–81. Nor should a court ignore "the factors which make it inherently difficult to discern consent from coercion in the prison environment." *Wood v. Beauclair*, 692 F.3d 1041, 1048 (9th Cir. 2012). However, those factors are not present where, as in this case, the plaintiff inmate no longer has any contact with the accused prison staff member and he freely

4

admits that he consented to the relationship and likens it to a romantic relationship he would have cherished were he not an inmate serving a sentence in a prison. In no sense of the word could Defendant's alleged conduct be considered the infliction of pain or sexual abuse upon Walton, wanton or otherwise.

During his deposition, Walton repeatedly spoke of his attraction to Defendant and the fact that he enjoyed his contact with her and wanted it to continue. He stated, "I'm in prison with an 18-year prison sentence. Any time that a female shows me any type of affection or intimacy, I'm not going to willingly turn the other cheek." He conceded that, apart from a brief disagreement, he never told her to stop and that he looked forward to his encounters with her. He acknowledged that he sometimes initiated the contact and stated that their interactions were "like two high school kids making out." Although Walton testified that Defendant gave him junk food, candy, pills, and even a cell phone, he asserted that these were all gifts and that Defendant never asked him for anything in return and he never gave her anything in return. *See Graham*, 741 F.3d at 1124 (concluding that the gifting of limited favors "cannot undermine the other overwhelming evidence of consent, particularly when [plaintiff] did not testify that the favors influenced her"). Without qualification, Walton agreed that, at the time, his relationship with Defendant was consensual and that he was a willing participant. Dkt. No. 21-1 at 13–15, 18–22, 32, 34.

Walton also testified that he did not report the relationship until after he transferred to Dodge because he did not want to get Defendant or himself in trouble and because he enjoyed his contact with Defendant. Dkt. No. 21-1 at 13–14, 18. In response to Defendant's proposed statements of fact, Walton attempted to qualify his deposition testimony by asserting that he *also* did not report it because Defendant was a staff member. He further responded that he did not feel like he could tell Defendant to stop because of her position. Dkt. No. 26 at ¶¶11, 14. But Walton's

5

qualifications, which he appears to have made in an attempt to create a triable issue on the question of consent, are not included in his sworn complaint, Dkt. No. 1, his declaration, Dkt. No. 25, or in the portions of his deposition that he cites, Dkt. No. 21-1 at 34–35, and are therefore not properly supported. *See* Fed. R. Civ. P. 56(c). Accordingly, based on this record, the Court finds that, as a factual matter, the only reasonable conclusion a jury could reach is that Walton consented to the sexual contact he had with Defendant.

Nonetheless, despite characterizing himself as a willing participant, Walton insists that Defendant violated the Eighth Amendment when she had sexual contact with him because, as a matter of law, he cannot consent to a sexual relationship with a prison official. *See* Dkt. No. 21-1 at 35 ("[I]t really doesn't matter what I wanted, or if I wanted it or if I liked it or if I consented to it. I cannot give consent to a sexual relationship with a staff member whether I wanted to or not. That's what it boils down to."). The Court concludes, as have other courts in this district, that consensual sexual contact does not give rise to a constitutional violation. *See Bentley v. Baenen*, No. 17-cv-1791-JPS, 2018 WL 1108701, at *2–3 (E.D. Wis. Feb. 27, 2018); *Torgerson v. Rasmussen*, No. 20-cv-1297-SCD (E.D. Wis. Sep. 28, 2022).

Walton's argument is predicated upon the Prison Rape Elimination Act (PREA), 34 U.S.C. §§ 340301 *et seq.*, which has as its goal the elimination of prison rape, and the Wisconsin Criminal Code, which defines second degree sexual assault to include "sexual contact or sexual intercourse with an individual who is confined in a correctional institution" by a correctional staff member. Wis. Stat. § 940.225(2)(h). Neither the PREA, nor Wisconsin law, warrant a different conclusion, however.

Defendant's alleged conduct does not constitute a rape within the meaning of the PREA. *See* 34 U.S.C. § 30309(9) (defining "rape" as "the carnal knowledge, oral sodomy, sexual assault

6

Case 1:22-cv-00007-WCG   Filed 01/20/23   Page 6 of 8   Document 33

with an object, or sexual fondling of a person forcibly or against that person's will;" ". . . where the victim is incapable of giving consent because of his or her youth or his or her temporary or permanent mental or physical incapacity;" or ". . . achieved through the exploitation of the fear or threat of physical force or bodily injury"). More importantly, the PREA does not create a private right of action. *See, e.g.*, *Bentley*, 2018 WL 1108701, at *2 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)); *Truly v. Moore*, No. 16-cv-00783-NJR, 2017 WL 661507, at *4 (S.D. Ill. Feb. 17, 2017) (collecting cases). And while it may constitute a crime for a correctional staff member to have sexual contact or sexual intercourse with a prison inmate, it does not follow that such conduct constitutes cruel and unusual punishment. To the extent Defendant's alleged behavior violated internal policy or even state law, it has long been held that violations of that nature "do not form the basis for imposing § 1983 liability." *Est. of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 532 (7th Cir. 2000); *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996) ("But ignoring internal prison procedures does not mean that a constitutional violation has occurred.").

In short, "not all misbehavior by public officials, even egregious misbehavior, violates the Constitution." *Graham*, 741 F.3d at 1126. Walton's rights under the Eighth Amendment were not violated because the record establishes that Walton consented to the sexual contact he had with Defendant. To hold otherwise would encourage inmates to manipulate the legal system by seducing officials for possible financial gain. Defendant is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Ashley Nehls' motion for summary judgment (Dkt. No. 18) is **GRANTED**.

7

**IT IS FURTHER ORDERED** that Defendant's motion to compel (Dkt. No. 28) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 20th day of January, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.